HARVEY LINDLEY ET AL., APPELLEES, V. WARREN E. WRIGHT, APPELLANT.

FILED JUNE 27, 1923. No. 22426.

1. Landlord and Tenant: VOLUNTEER CROPS. A farm tenant whose lease covered the crop year of 1919 and expired March 1, 1920, had, as such tenant, no interest in a volunteer wheat crop produced and maturing in 1920 on the ground from which he harvested the wheat the previous year.

2. Statute of Frauds: TENANCY: ORAL AGREEMENT. Evidence and offers of proof examined, and *held* insufficient to take the claimed oral agreement for future tenancy out of the operation of the statute of frauds.

APPEAL from the district court for Deuel county: J. LEONARD TEWELL, JUDGE. *Affirmed.*

*Hainer, Craft, Edgerton & Fraizer,* for appellant.

*L. O. Pfeiffer, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE and DEAN, JJ., BLACKLEDGE, District Judge.

BLACKLEDGE, District Judge.

This is an action of replevin instituted by Johnson, the landowner, and Lindley, his lessee, as plaintiffs, against defendant, Wright, to recover possession of a crop of wheat grown and standing in shock upon the land in Deuel county.

The controversy submitted arises from these facts: That for the previous year one Castle held a lease for the land expiring March 1, 1920, and had fall wheat growing thereon in the year 1919, when he sold the same to Wright, who took charge of the crop and about July 7, 1919, commenced harvesting the wheat with a machine known as a "combine," which both harvested and threshed the grain. The harvesting lasted for a period of eight or nine days. Afterwards the defendant allowed his machinery to remain on the land until in September, following, when he removed the same. Soon thereafter he went to California, where he remained for the winter and spring, returning to the vicinity of this land July 6, 1920. In the meantime Johnson, the landowner, in February executed a lease to his coplaintiff, Lindley, for the land for a term of years beginning March 1, 1920. The lease to Lindley provided that the land should be summer-tilled in the summer of 1920. It is claimed on the part of plaintiffs that sometime in April, upon Lindley taking his machinery to the land for the purpose of commencing the cultivation, it was noticed by him that there was apparently coming upon it a crop of volunteer wheat, and that he and Johnson, after waiting for some time to see whether the wheat developed, concluded early in June to let it stand for the purpose of making a crop of volunteer wheat, which they would harvest and divide the proceeds between them, and that they by oral agreement modified their lease accordingly.

Upon the return of defendant, Wright, from California, about July 6, he examined the wheat in the field and proceeded upon the following day or a day later to put in

his machinery and commenced to harvest it. In this operation he was interrupted by the service of an injunctional order issued in a case commenced by these plaintiffs against him. This order, however, was later dissolved, and upon its dissolution plaintiffs instituted this action of replevin for possession of the wheat, threshed and marketed it to the amount of some 4,300 bushels, then of the value of approximately $2.25 a bushel.

The contention of the defendant upon which he bases his claim of title to the wheat is, as disclosed by his offer of proof, that on July 10, 1919, while he was engaged in harvesting, he and Johnson had a conversation, wherein "Wright said to Johnson that he would like to have the land to put back into wheat, to seed it back into wheat; that the said Johnson said to the said Wright that that was all right with him, that he should go ahead and put it back into wheat, and that he would leave it to his judgment how the land was to be put into wheat; that in the course of the conversation the defendant Wright asked Mr. Johnson if it would be all right to disc it back into wheat, and the said Johnson replied that it had been plowed the year before and the ground was in good condition, and as far as he was concerned he would leave it to Wright's judgment; that during the conversation the said Johnson said positively that it was all right with him for Wright to put the land into wheat."

Upon the trial the district court excluded this evidence offered by defendant upon the theory that it tended only to establish an oral contract for a lease to begin in the future, and which contract, whether a modification of the original lease with Castle or a new and subsequent agreement, was required by law to be in writing, and that there had been no part performance thereof shown or other matter sufficient to take the agreement out of the operation of the statute of frauds.

Some other offers of proof were made in the course of the trial, being of circumstances or other conversations

claimed to be corroborative of the claims of defendant, which were excluded by the trial court. As to some of these we are of opinion that the court came dangerously near to hewing over the line and excluding matters which might have been competent, but the case of the defendant must rest in that regard upon his own offer of proof as to the basis of his claim, and he cannot make his claim here, or in the trial court, upon a broader basis than is evidence by his offer of proof.

Upon the conclusion of the evidence each party moved for a directed verdict in his favor. The court directed a verdict in favor of the plaintiffs, and judgment was accordingly given.

Some of the offers of proof made tend to support a contention by defendant that he had intentionally set the machine so that it would waste or distribute considerable amounts of wheat rather evenly over the ground and that it was seeded in this manner. There is no dispute that machines of this kind do ordinarily in their operation waste or distribute some of the wheat, as it must be in a thoroughly ripe condition in order to be successfully harvested and threshed by this kind of a machine. There is, however, no offer of proof on defendant's part that he and Johnson agreed that the seeding should be done in this manner or that the machine should be so set for the purpose of seeding it for the next year's crop. Besides, this conversation took place on July 10, at which time defendant had already been engaged in harvesting for three days, and there is no contention that there was any agreement or conversation of any kind covering this prior period nor that there was any different adjustment of the machine made thereafter, nor that the matter of the adjustment or use of the machine for the purpose of seeding was talked over between the parties. One witness, who was employed by defendant, Wright, at the time of harvesting, says that they regulated the combine so that it would scatter the right amount

of wheat on the ground to be a good volunteer crop; but the defendant, Wright, does not so testify, nor that it was agreed to do so; and no one testifies to the effect that the plaintiff Johnson either agreed to that method or knew that it was being done or attempted, nor is there any offer of proof to that effect.

The court also excluded the offered testimony of another witness of a conversation between the witness and Johnson alleged to have been had on about March 4, 1920, which it will be noted was after the execution of the lease to plaintiff Lindley, to the effect that, in speaking of the wheat, Johnson said to the witness that Wright had some good wheat on this land. But, under the circumstances, and in view of the scope of the other offers of proof made by defendant, we do not believe this ruling was prejudicially erroneous, and such statement, if made, although possibly a declaration against interest, could not avail to make the necessary elements of contract upon which defendant could rely.

Defendant, Wright, does not by his own testimony or that of any of the witnesses for him show that he did anything, other than the claimed adjustment of the combine, in the way of seeding, cultivating or looking after the crop in any way. The land was otherwise unoccupied, and was without improvements except being under fence. When the defendant finished his harvesting and threshing in July, 1919, he left his machinery on the land. He at no time came back to do any work on it. In September he removed his machinery and betook himself to California, leaving nothing, so far as the record discloses, to show that he claimed any interest in or occupation of the land. He had no communication in the meantime with the landowner, and does not appear upon the scene until in July, when he undertakes to harvest and claims this wheat. Even if it be considered an unearned increment of the land, it would properly belong to the landowner and be subject to his disposal, rather

than that of a tenant whose lease had expired March 1 before.

Defendant objects to the joinder of plaintiffs herein, but is in no position to complain of arrangements between the plaintiffs which are satisfactory to themselves. Upon the whole record, we are satisfied that the judgment of the district court was right, and it is

AFFIRMED.